PEOPLE *v.* SYJUT.

1. INSANE PERSONS — FEEBLE-MINDEDNESS — IDIOTS — IMBECILES — EPILEPTICS.

The term "insane persons," as used in the statutes, does not include those afflicted with feeble-mindedness, idiots, imbeciles, and epileptics, special hospitals being devoted to the care of the latter groups (2 Comp. Laws 1929, § 6878, as amended by Act No. 142, Pub. Acts 1939; § 6921, as amended by Act No. 104, Pub. Acts 1937).

2. CRIMINAL LAW—EPILEPTICS—ACQUITTAL.

If an epileptic person be acquitted of charge of murder in the first degree on the ground of his lack of intent due to an epileptiform seizure, application may be made to the probate court for both his temporary and permanent commitment as an epileptic until cured, if possible, and confinement in a proper institution for epileptics (2 Comp. Laws 1929, § 6878, as amended by Act No. 142, Pub. Acts 1939).

3. SAME—INSANITY HEARING—REVERSAL WITHOUT PREJUDICE— EPILEPTICS.

Reversal of order of adjudication of insanity entered prior to trial on charge of murder in the first degree is made without prejudice to the filing of a new petition pursuant to statute, in case there is sufficient new evidence since the last hearing to show that there has been such a deterioration in mental con-

dition of defendant, an epileptic, so as not to justify a trial at present (3 Comp. Laws 1929, § 17241, as amended by Act No. 317, Pub. Acts 1931).

Appeal from Recorder's Court of the City of Detroit; Skillman (W. McKay), J. Submitted October 12, 1944. (Docket No. 79, Calendar No. 42,867.) Decided January 2, 1945.

Joseph Syjut was charged with murder in the first degree. On sanity hearing he was adjudged insane. Defendant appeals. Reversed and remanded for trial.

*Joseph Charnoske,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Prosecuting Attorney, and *Henrietta E. Rosenthal,* Assistant Prosecuting Attorney, for the people.

BUTZEL, J. Joseph Syjut was charged with murder in the first degree. Prior to the trial petition was filed by the prosecuting attorney alleging that it was doubtful whether defendant was sane or insane and, therefore, criminally responsible for the offense he committed. In pursuance of 3 Comp. Laws 1929, § 17241, as amended by Act No. 317, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17241, Stat. Ann. § 28.967), an order as prayed for was entered designating two psychiatrists as a commission to determine the sanity of the defendant. They made a written finding that the previous findings of the State hospital commission, as shown in its report, were essentially true in the holding that the defendant had difficulty in comprehending the meaning of questions, possibly by deterioration and possibly by basic feeblemindedness, and that it was extremely doubtful

whether he could answer questions in a reasonable and rational manner and, therefore, could cooperate with counsel; and that because of his inability to cooperate with counsel, the commissioners recommended that defendant be committed to the Ionia State Hospital for care, treatment and quarantine until it is determined by the superintendent of that hospital that he is able to stand trial. One of the psychiatrists who signed the report also acted with two other psychiatrists in the report previously submitted by the State hospital commission. The other two psychiatrists who signed the former report did not report or testify in the present case.

While we are much impressed by the first report, we must adjudicate the case on the record on the hearing on the prosecutor's petition in the recorder's court of the city of Detroit. Defendant, a young man 21 years of age, has suffered from epilepsy since infancy. At one time during a fit while working at a machine, he lost a hand. He subsequently went to work looking after the distribution of tools at a tool crib. He kept this position for a year and a half. He is subject to fits of epilepsy from time to time and latterly with greater frequency since being confined in jail after the alleged murder. The facts in regard to the crime are not before us and we are not informed as to how he secured the weapon that was used or as to the other pertinent facts. The record indicates that the claim will be made that while defendant had an epileptic attack, the gun was discharged by him and the noise brought him back to his senses. There is no question but that the defendant is an epileptic. However, there was no showing that defendant lacked the proper comprehension of his own mental condition in regard to the present cause or did not have sufficient intelligence so as to properly cooperate

with counsel in the trial of the case. The showing to the contrary is very impressive.

The first psychiatrist who testified on behalf of the people stated that defendant comprehended the nature of the particular charge against him, but that he did not comprehend his own condition with reference to the charge and was not able to assist counsel in his defense. He, however, stated that as far as the work the man had been doing, he had an understanding mind, he answered promptly questions in regard to the tragedy and, while some of his answers were irrelevant and showed a lack of comprehension of their nature, he gave reasonable replies showing his memory of dates and events. The other doctor stated that he saw defendant twice and discussed the condition with the first doctor and agreed with him. When asked, however, whether defendant could assist counsel in his defense, he replied that judgment could best be passed by the authorities at the institution at Ionia, that they could observe and make a study of and give proper treatment for his epileptiform seizures. No tests were given based upon defendant's appearance, his activities or motor control, his thoughts, his mental condition and reactions as to present and future things. No examination was made as to whether he had any delusions. The doctor stated that as far as his orientation was concerned, he knew where he was and the circumstances of the events that led to the crime with which he was charged and which defendant termed an accident.

Three psychiatrists called by the defense testified in no unequivocal terms that the condition was one where the defendant suffered from epileptiform seizures but that he was in no sense insane. Some of them stated that he was not a man to whom nature had been very kind in mental endowments, but he

was not, however, by any stretch of the imagination, feeble-minded, that he was definitely sane and co-operated with counsel, and understood the proceedings against him. A reading of their testimony immediately raises a doubt as to the correctness of the diagnosis by the doctors who testified for the prosecution. That doubt, however, is resolved in defendant's favor by his own testimony. When examined in regard to his epileptic seizures, his answers were coherent and in every sense responsive. He showed that he understood the charge. His attorney also testified as to his interviews with defendant and concluded that defendant was sane and able to proceed and assist in the trial of the cause. He further stated that if the case were not tried at the present time, witnesses for defendant might disappear and later on not be available. The judge asked what would happen if defendant suffered from an epileptic seizure during the trial of the case. The testimony showed that the seizures as a rule were of very short duration but might last a day. At most, the case would have to be adjourned for a short period. Defendant did have frequent attacks, sometimes as many as three a day, when confined in the county jail; but it was shown by his testimony that while in jail he was deprived of the use of medicine that was used to ward off the attacks. The fact that defendant is not overly intelligent neither shows feeble-mindedness nor insanity. It is also true as claimed that epilepsy is a frequent concomitant of low-grade feeble-mindedness. This is especially true of old epileptics, particularly if they are untreated. See Selling, "Synopsis of Neuropsychiatry," p. 287. However, defendant showed no sign of feeble-mindedness at the hearing.

In *Beattie* v. *Bower*, 290 Mich. 517, the distinction between insanity and epilepsy is shown. Distinc-

tion also is made in the statutes, 2 Comp. Laws 1929, § 6921, as amended by Act No. 104, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 6921, Stat. Ann. 1944 Cum. Supp. § 14.844):

"The terms 'insane' and 'insane persons' as used in this act, include every species of insanity and extend to every mentally deranged person, and to all of unsound mind other than feeble-minded, idiots, imbeciles, and epileptics."

Further provision in law is made for committing epileptics to a proper institution devoted to their care and not to hospitals for the insane. 2 Comp. Laws 1929, § 6878, as amended by Act No. 142, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 6878, Stat. Ann. 1944 Cum. Supp. § 14.801), provides for a State hospital near Caro for the humane quarantine and treatment of epileptic persons to be known as Caro State Hospital for Epileptics.

If defendant should be acquitted on the ground of his having lack of intent due to an epileptiform seizure as claimed by him, application can be made to the probate court for both his temporary and permanent commitment as an epileptic until cured, if that is possible, and he may be sent to a proper institution for epileptics as provided by law.

The order of adjudication of insanity is reversed and the cause remanded to the recorder's court for trial of the case on the merits. It shall be without prejudice to the prosecutor filing a new petition, if he sees fit, in accordance with 3 Comp. Laws 1929, § 17241, as amended by Act No. 317, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17241, Stat. Ann. § 28.967), if there is sufficient new evidence since the last hearing to show that there has been such a

deterioration in defendant's mental condition so as not to justify a trial at the present time.

STARR, C. J., and NORTH, WIEST, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.